which is Rivera v. Monko et al., case number 20-2531, a counsel for appellant. You have 15 minutes, and any time that you would like to reserve for rebuttal, the floor is yours. Good morning, Your Honor. Devi Rao for plaintiff appellant Michael Rivera. I'd like to reserve three minutes of my time for rebuttal. Sure. Thank you. Mr. Rivera was denied access to all law library materials for no apparent penological purpose on the eve of and during a civil rights trial where he was representing himself pro se. The Supreme Court explained in bounds that meaningful access to the courts is the touchstone. In Lewis, over and over again it used language denoting a continuing right of access. Christopher discusses backward-looking claims which involve the loss or inadequate settlement of a meritorious case. This court has consistently, in at least 40 opinions, addressed access claims on the merits, an exercise that presumes the right extends past the filing of a complaint. And it is Pennsylvania DOC's own policy to give inmates access to legal materials throughout the pendency of their cases. Appellants dispute none of this. Their view is instead that there is no right of access to law library materials after a prisoner files a complaint. That is an extremely wrongheaded and dangerous position, one that would negate not only the right of access to the courts, but the underlying constitutional rights that the right of access is meant to protect that cannot be and is not the law. This court need only reverse the district court on its legal error that prevented it from addressing Mr. Rivera's claim and remand for further proceedings. I'd like to start with the Allah opinion because I think it illustrates nicely a number of issues that are relevant to this court. First in Allah, this court cited Lewis's language about efforts to pursue a legal claim and held that Mr. Allah stated a claim regarding his inability to file a brief in his post-conviction appeal. The facts of that case are also similar to the facts here. Mr. Allah alleged that he was denied law library access while in administrative segregation. Finally, I think Allah is helpful here because it shows the approach that this court should take in this case. In Allah, the district court made an error of law that prevented it from addressing the legal claim on the merits. It thought that the Supreme Court's decision in Sandin meant that there is no access claim when a prisoner is in administrative segregation. Let me, now might be a good time for me to just jump in with, you know, every now and then a briefing in a case has a certain direction to it, you know, a certain magnitude and direction and vectoring in a certain way. And it strikes me that a lot of the briefing in this case focuses on timing, timing of right of access. Does it apply just kind of pre-complaint or maybe pre-appeal, or does it apply kind of at all points in time, such as pre-trial? And that seems to be a very, very, very prominent vector in this briefing. But I guess, and that goes to the question of when. But I think one of the thoughts that I had when I read the brief was not to diminish the significance of when, but when only becomes important if we have a right in play at all. And in recognizing that the origins of the right of access aren't super, super clear, but just taking for a minute that it exists, right? And this is very Hofeldian, at least as I read Hofeld in law school, which is rights have corresponding duties and obligations. So if one person has a right, there's a corresponding duty and obligation. And so if there's a right to access, that means that there has to be a corresponding duty or obligation. And if it's a right to access law, library materials, that's a duty. And as I read it, that right of access has two duties. One is on the state to go physically supply law library materials, a black's law, federal rules of evidence, the state's rules of evidence. And that is truly on a government. It's not on individuals. Right. We don't ask the individual warden to pony up out of his or her own money to buy a law library. That's just not how it works. It's on state. To the extent, though, that there is a right of access, it carries a duty on an individual, it's not an affirmative duty, it's a negative duty, a duty to avoid. Denying access to what the state was supposed to provide, and so I ask that in this case, because at least when we read about the two guards and the librarian, maybe a different, but at least when we look at the two guards, I mean, the thought is they couldn't fix computers and they didn't produce the materials. But the question is, if the only duty on them is a negative duty, not to prevent access that the state should have given, then why shouldn't this case, at least as to the guards, librarian might be different, but at least the guards, that's off the table, right? Your Honor, no, we think that the guards had an obligation to furnish Mr. Rivera with the access that the. So what the guards are supposed to pay for out of their own money, federal rules of evidence and lexus, nexus? No, of course not, Your Honor. The prison had set up those materials to be available to Mr. Rivera. The housing unit that he was assigned to had two computers available for library access, and the broader institution had a law, a more traditional law library. And so it was the guards obligation to assist him in accessing those materials. So now that puts an affirmative obligation on the guards, and I'm not sure that the right of access does that to individuals. It might do that to a state. But but essentially what you're saying is because the two guards were not IT savvy enough to fix two computers and log them on to LexisNexis, they're now individual capacity liable? No, Your Honor, not necessarily. So two points there. First, I will admit to you, if this was just a case about the computers, it would be a harder case. But Mr. Rivera understood the computers were not working. The guards said we would try to get them fixed in advance of trial. And he said, OK, in the meantime, could I please have access to the physical books that I know exist in the other parts of this institution? And he was not saying broadly, you know, send me over there. He said there are two pieces of material that I need. These are the two fundamental texts that anyone would need on the eve of trial. And that's the federal rules of civil procedure and the federal rules of evidence. And they said no. And so it's not just I think the record says that they said we'll try. And then the librarian. And so so so my issue is about the guards. To your point about someone saying no, that that steers us into the librarian point. But I don't think that the guards themselves said, well, the rules of evidence are, you know, we've got them back in our office and now we say no. The answer that they said was they're in someone else's possession, custody or control, not ours. They didn't have possession, custody or control over. There's no allegation they did. And so now to say that they had to go and pry away the federal rules of evidence through some interlibrary loan process or drive to another state correctional office to get those and drive them back, that is a bold, bold, bold new holding that no one's ever held before. So, Your Honor, he was in a particular segregated unit at the institution. The physical books were at the same facility, just in a different part of the facility. So I just want to clarify that point. And we're not saying that the guards are liable. All we're saying here is that Mr. Rivera needs the what is legally entitled to pursue his claims against against any of these defendants because the right continues to this point. The district court, these questions you're raising are fact bound disputes about whether he met the pleading allegations. Those these issues have not been addressed at all by anyone because the district court erroneously thought that Mr. that under any factual circumstances, Mr. Rivera just simply did not have a cause of action. And that's wrong for all the reasons we stated in our brief. And so the proper remedy here is to do what the court did in Allah, which is to fix the district court's erroneous legal determination and remand for proceedings consistent with this opinion. The questions about injury and causation and whether these defendants did have control. And let me bracket that and say I think it is alleged plausibly in the complaint that the two officials did have control over these materials. So just to correct that, but but these these questions are ones that the district court is better able to address in the first instance. And I think it would be especially procedurally inappropriate for this court to reach out and decide this case on the questions of whether he adequately pled a cause of action here because he has not been allowed an opportunity to amend his complaint. This court's case law is quite clear that where a complaint is dismissed for failure to plausibly allege a cause of action, the plaintiff needs to be given an opportunity to amend unless that opportunity would be futile. And here there's no question of futility that the appellees raise issues of causation and the like. But those are things that could be fixed had if Mr. Rivera is given an opportunity to amend his complaint. And so the appropriate remedy here is to correct the district court's erroneous interpretation of the temporal scope of the right or the vector, as you termed it at the beginning, and then let the district court address these questions in the first instance with an opportunity to amend. And so I mean, so I mean, I guess there's two ways that that could happen in your client's favor. One would be to just give a full, bold pronouncement is to the temporal duration of the right. Right. And you advocate for that. The other maybe. I don't know if this is the right description, more modest approach would be just to say this was dismissed on a on a on a screening, as I understand it. And the one thing we know is speaking for myself is this doesn't appear to be a frivolous issue as to whether this was clearly established. And so at one level, if it was dismissed for frivolousness, we could just say issues not frivolous. Go take it again. We could get that in the context of likely an amended complaint, because there are issues that probably a client like yours would like to amend. And we would it would just kind of be a do over with the understanding that this is not a frivolous complaint. Your Honor, I don't think that would be an approach that would work in this case because and I appreciate the idea that our client would be entitled that the complaint is not frivolous and that he would be entitled to amend. But once he does that, then the district court is back where it actually ended, where it  I think that it would just be a do over with the allegations in a, let's say, amended complaint. But the question still remains, does he have a cause of action that is triggered by the denial of law library access on the eve of his trial? The district court said no. The district court determined that as a matter of law, he couldn't pursue his claim. And and we think that this court needs to correct that error and just sending it back for further proceedings would leave the district court in a confusing situation where it has already issued a legal pronouncement that we, for the reasons addressed in our briefing, it feels quite wrong. Well, I see you're at time, I have nothing further, but I apologize to my colleagues because I've asked all the questions, so judges Roth and Nygaard, I'm sorry if I I. I know how to break in when I need to, but OK, I have no questions, judge. OK, I have no questions. Thank you. All right. Thank you very much, counsel. We'll we'll now hear from Mr. Skarnicky, is that right? Skarnicky. Skarnicky. So so the floor, the virtual floor is yours for 15 minutes. Thank you, Your Honor. May it please the court. Michael Skarnicky from the Pennsylvania Office of Attorney General, on behalf of Lieutenant Monko and Sergeant Gilbert. Mr. Rivera was not denied access to courts because he filed his complaint for an access to court's claim based on affirmative assistance, not active interference. Once the complaint has been filed, the right to access has been honored. This is the fundamental mistake my adversary makes by failing to distinguish between a prison official actively interfering with an inmate's access to courts and a prison's obligation to affirmatively assist an inmate in accessing the court. When a prison official. This argument reminds me of a pregnant woman coming to the hospital and labor and being told, OK, you've got the right to come in, but once you get in here, you've got to figure out yourself how to get the baby born. And it seems to me that that an important part of a lawsuit is what comes after filing the complaint. And I think this has been reflected in many Third Circuit cases that the language reflects the concern of our court that once the complaint is filed, that's not the end of it, that that baby in there needs to have expert help in being born. And I'm not I'm not inclined by that, that the prisoner should have legal assistance in with persons helping him. But getting the complaint filed is only the first of many important steps in having access to the courts. And to say that it's terminated suddenly once the complaint is filed, to me, seems to ignore the importance of what this this right to access to the courts is supposed to protect. I understood, Your Honor, and I appreciate the analogy, but both U.S. Supreme Court precedent and this court have not extended the right of affirmative access beyond the filing of the complaint. Prior to Bounds, the only right to access that had been recognized was to be free from active interference. Yes, Bounds expanded that to include a right of affirmative assistance. Lewis reigned that in and it has not gone beyond filing a complaint. In fact, I know my adversary is focused on several different phrases in Lewis, like pursue and present and provide relief. But you have to look at the broader context of that opinion. Look at the three examples that the court used in Lewis when they talked about access to courts. All three involve complaints. One was a complaint, an inmate prepared that was dismissed for failure to satisfy some technical requirement. The second was an inmate who was unable to file a complaint because of inadequacies of the law library. And then third, the court said that a prison could get rid of law libraries altogether and then replace it with some minimal access to legal advice. And a system of court provided forms such as those that contain the original complaints and then two significant inmate cases, Hudson and Sandin. And those forms only had to ask for the facts and not attempt any legal analysis. So so so let me just let me just jump in here. It sounds to me I mean, there is a little, you know, strangeness to the law, to the right of access. It's judicially developed and that sometimes means it it comes on a case by case basis. But from what I hear you saying is if the if if if Mr. Rivera here wanted to access the rules of federal civil procedure to file a complaint, to make sure that he complied with, for instance, Rule 8a and gave a short, plain statement, you would say, oh, yeah, totally great. You get the access. And he said, you know, I'd really like to see the rules of evidence to make sure that I I don't, you know, see any privileged materials or rely too much on hearsay or doing like that before I file my complaint. What I'm hearing you say is, yeah, yeah. Right. Right. Exists there. You'd have the right of access. Now, if he says, you know, later, I'd really like those same materials again because I'm about to go to trial. What you're saying is, oh, no, no, the right, the right doesn't give you those. You had those once. I hope you took a good look, but but you don't have them now because right access is gone. So, you know, we could in our beneficence maybe extend it to you. We don't want to. And so you have no rights here. Is that your position? Yes, that's our position. You know, it's a constitutional right and it's a limited right. And I think this is consistent with the overall structure of the U.S. constitution. The constitution is a charter of negative, not positive rights. So think of Congress shall make no law prohibiting the free exercise of religion or think of it generally is. But I don't think you can say it is exclusively that because we have a bunch of cases that provide a right to counsel and a right to court appointed counsel and we have right of access. And so so I think that this this distinction between negative and positive rights is really, really, really important to me, too. But but but I don't think that you can say that every constitutional right is is is a negative right. I agree. That's true. Yeah. Yeah. I I agree with that. But I think I mean, it is a charter of negative rights. So I think if you make the distinction between how few positive rights are and negative rights are, that makes sense with the case law, because the case law has only recognized a limited affirmative duty as opposed to a broader interference. So as I argued in my brief, the freedom from interference extends well past the complaint. It's through all phases of the litigation. And that's reflected in the case law in cases from the ninth and 10th Circuit. It's when we talk about affirmative right. It's more shallow now. Well, if you're going to if you're going to talk about freedom from interference, didn't the law librarian interfere when the librarian, for no given reason, says we won't let the prisoner have these copies? I mean, what's what what is what what is the point of that? What is the justification for that? There's none given. Shouldn't we be able to go back in and determine whether this was active interference, as you say, is prohibited, as opposed to passive failure to want to make the effort? Your Honor, so I have several points on that. Passing someone a book we submit is it would be affirmative assistance. Now, there is a policy. He was in what's called the segregated RSU, where they put at the time in 2017, there was a policy that. And prisoners in the RSU have the same right to access the prisoners in the rest of the prison. And therefore, if the RSU cannot provide computer monitors that work, isn't there some obligation on the part of the prison to create that access to courts, which you say exists at least to prevent active interference? Your Honor, they do not allow hardcover books into the RSU because of security reasons, because they could be used to make requests. But they allow computer copies. And wasn't that one of the requests was for computer copies? Correct. There was a request for computers. He was given access to computer. Unfortunately, it wasn't working. It was a Friday before the Monday. Okay. Xerox copies, access to copies. They don't have. I don't believe they have. He didn't make that request to begin with. And my understanding of the record is I've read it that he asked for copies of the Federal Rules of Evidence. Now, a copy is a copy. And you seem to think that the access to the courts is limited in the RSU. But I don't think you have any case basis or opinion basis to back that up, do you? Your Honor, he was given access through the computer. Unfortunately, they weren't working at the time. The correctional office didn't have access. He was given access, but they weren't working. Okay. Access to a broken computer? I mean, yeah. Let's just say that for whatever reason, they also had a copy of the Federal Rules of Evidence there. But somehow, rainwater got on it. There was a drip and all of the ink was blurred. I mean, would you say that's access? That's a copy. That's our book. It's titled Federal Rules of Evidence. Every now and then, you'll see the Supreme Court take a right. And then they'll amplify it a little because the phrase that they use, it's a common theme. They say meaningful. They say meaningful access. They don't just say access alone. They say meaningful access. So to my colleague, Judge Ross' point, I think what she's saying is, you know, maybe it's some hyper-technical version that was access, but no one says that's meaningful access, right? You aren't saying that's meaningful access, are you? You're interpreting me well. Thank you, Judge Fitz. No, I'm not saying that's meaningful access, but again, we're talking about something way down the line past the filing of the complaint. Once the inmate has been given access to the complaint, he's in court. And then he also has recourse to a federal judge from whom he could ask for the appointment of counsel, as Mr. Rivera did three or four times. He could have asked the judge for an extension because he couldn't get into the library. I'm sorry, I couldn't hear you, Your Honor. So let me just ask this question. This is kind of a sandwich theorem sort of question in terms of we've got a layer on top and a layer on bottom, and therefore we kind of know what's in the middle. And so one of the things that I think the case law tells us is that maybe you agree to is that you have this access right before a complaint, and you also have this access right before an appeal. And so if you have an access right before a complaint and you have an access right before an appeal, that suggests that you have two endpoints where there's an access right. And that would lead me to think that the access right extends continuously through those two endpoints, not that there's a donut hole in the middle where there's no access right, because otherwise we could spin ourselves off and say, oh my goodness, this prisoner, for whatever reason, triggered MDL. And now they want to do an MDL complaint. And they want to do this in multi-district litigation. And we don't have a case that says that a prisoner needs access to the MDL court rules. And the answer would be, maybe that's not clearly established. But on kind of a sandwich theorem of we've got the two layers, and so maybe what's in the middle should be filled in. I mean, that cuts against you, right? I haven't seen a Supreme Court case that has recognized the right of access on the filing of a notice of appeal. And I don't think this court has recognized that either. I know my adversaries are relying on 47 cases between pages 23 to 26. But most of those have to do with active interference. And some of them that do have to do with affirmative assistance. In those cases, this court simply assumed for purposes of argument that there was a right of access and then dismissed it on other grounds, namely actual injury. And this court doesn't extend constitutional principles, constitutional clauses of action by silence. I have not seen a case that says there's a right of access to access the federal rules of appellate procedure before filing a complaint, Your Honor. Okay, so what you're saying is, no, it's an open-faced sandwich. That's what I'm saying. Yes, it's a hot open-faced turkey sandwich. And you can only file the complaint. And once that's been given access, as I was mentioning before, the inmate has other options. He could have asked the court at trial, can I have an extension? I didn't get to look at the federal rules of evidence. He could have appealed. He could have appealed and said these two documents were so important that I needed to have them entered into evidence. Instead of doing that, he's entered with essentially a collateral attack here. His right to access was honored. If I could just briefly touch on the qualified immunity, Your Honor, there is not a single case that's remotely similar to what we have here. I'm not suggesting there has to be something exactly the same, but there has to be something factually similar. And we have nothing where an inmate's waited two years, waits to the Friday before a Monday of his trial to request access. The correctional officers do all that they can do. And it turns out we can maybe help him on Monday, but his trial is starting. There's nothing remotely close to that situation. And I'd like to point out that my adversary has not particularized a lot of the facts in this case. My adversary wants to deal in broad abstractions about how far this right extends. But for all the reasons we've just said, that access right is limited to the filing complaint. I wanted to highlight just a couple other things. We hadn't cited to the dissent in Lewis for the purpose of showing that both the majority and the dissent knew what was at stake in Lewis. And what they said there was that they could not concur in the suggestion that bounds should be overruled to the extent it requires states choosing to provide a law library for court access to make them available for a prisoner's use in the period between filing a complaint and its final disposition. So both the dissent and the majority knew what was at stake. They limited it to that right. As we mentioned in our brief that scholars have read it the same way, the 7th and 9th Circuit have read it the same way. I mean, sorry, not the 7th, the 9th and the 10th Circuit. In fact, one part I just wanted to highlight for your honors. The 9th Circuit, for example, wrote the right to legal assistance is limited to the pleading stages. Prisoners have a right to litigate claims challenging their sentences or their conditions of confinement to conclusion with, quote, quote, without active interference. In fact, in Lewis, they actually use the words active interference too. So I think the distinction exists in the case law, that dichotomy, that it's been limited to the filing of the complaint. Nothing in this court has said that that right extends beyond that. The 9th and 10th Circuits agree with us. And I know I've come past my time, your honor. I'm happy to answer any other questions that you have. Otherwise, I can rest on my brief. Thank you very much. I have no further questions. Do any of the other judges? I have no questions. Nothing. Thank you very much. Ms. Rao, I think you reserved three minutes for rebuttal. Is that correct? Yes, that's right. Thank you, your honor. Just a few quick points. So first, my friend on the other side suggests that Mr. Rivera, when he knew he didn't have access to the law library, should have requested an extension or a continuance of his trial. I'll just note the irony there. Of course, his ability to seek continuance would be premised on the federal rules of civil procedure that he didn't have access to. And one factual point is, I want to push back on the notion that the computers just happened to be broken on this weekend when he needed access. The computers were broken for the entire time he was housed in this facility. And in fact, the record demonstrates that they remained broken at least for a month afterwards. He grieved. He was back at the same facility in August and grieved again about the broken computers. And this is putting aside the books themselves, which Judge Roth asked about in some detail. So I mean, but again, holding two guards liable for not being able to fix computers. I mean, sometimes, you know, when an individual might violate someone else's constitutional rights, they might have that kind of, you know, conscience pinging moment where you say, oh, maybe that was too much force. Or, you know, maybe I should have attended to that prisoner's serious medical need. You know, it's hard for me to think that two guards when they went home and were kind of thinking about their day said, you know, we were in massive constitutional jeopardy because we can't get the two computers in the law library fixed. Well, Your Honor, I think this goes to the merits of the underlying case. And it is true. And clearly established constitutional law, because the whole point of the clearly established requirement to the extent the purpose matters is that these state actors or individuals acting under color state law have some understanding that they'd be violating someone's constitutional rights. And so at one level, when they went home, or even when they were doing it, I mean, I guess the question is, when they're unable to fix computers in a law library, what is it that tells them that? Yeah, it's really clear. You are jeopardizing constitutional rights right here, right now. Your Honor, as you pointed out earlier, Bounds talks about the access right being meaningful and requiring some ability for folks to access library materials here, because of the computers and their inability or unwillingness to provide him with copies of the material in book form or in photocopy form. He was denied access to the two fundamental texts he would need to prepare for his trial. Now, Your Honor, we're not saying Mr. Rivera wins this case. All we're saying is that the district court should assess the case on the merits, and he should be given an opportunity to amend. I'd like to briefly discuss this active interference point that was raised. That distinction is found nowhere in the doctrine of the Supreme Court or this court. Bounds talks about meaningful access. We just discussed that. Lewis is about the reasonable opportunity to present claims. Christopher speaks broadly of official action, interfering with a right, both in forward-looking and in backward-looking claims. How or why this right is denied doesn't matter, and in fact, a la the case we discussed earlier. The scope of the right matters. What do you mean by scope, Your Honor? I'm sorry. In terms of whether what the individual's obligations are versus what the state's obligations are. When the Supreme Court articulated the right, they spoke of the state having to provide, not individuals having to provide. Now, we recognize that the state works through individuals, but usually when you impose an affirmative obligation on a government, that doesn't also impose an affirmative obligation on the individual actors in government. And so absent an indication from the Supreme Court that the affirmative obligation also extended to individual actors, it's a little hard to say that the right of access allows an action for at least a violation of affirmative obligation. So I think this goes to a colloquy that Judge Roth was having with my friend on the other side a little earlier, which is when the facility did provide these materials, at least in theory, they had these computers in this part of the facility, but they weren't working. They had a law library in the other part of this facility, but they didn't provide him with the access. And so the fact that they existed in some theoretical sense that the institution did have them available only helps Mr. Rivera if he is not, if he is provided with these materials in some real tangible sense by the folks who are responsible for giving him the access to those materials. And I'm talking here about the two defendants here and the librarian. And in fact, in that way, you can kind of look at this as more of an active interference type of case if you think that distinction is relevant, which it just isn't. As Allah said- No, so you're at time for your rebuttal. I have one follow-up question for you that I'd love for you to answer, and then I'll turn it over to my colleagues if they have any follow-up questions. But I was using this metaphorical kind of sandwich theorem thing, where I seem to have recalled reading that there is a right of access before filing an appeal. But was that my mind playing tricks on me in a bunch of string sites, or does that exist? Your Honor, thank you for raising the sandwich again. I think it is not... The sandwich has been built out. We're not just talking about two pieces of bread here. The meat and the cheese and all that has been built out in cases by this court, and including a couple of cases specifically about folks preparing for trial. That's Bacon and Williams, cited at footnotes eight and 13 of the sort of omnibus citing the Third Circuit case. And what about appeals specifically? Because for some reason, that's the outer layer that seems to complete the picture the most for me. And I'm speaking only for me. I'm not speaking on behalf of the panel or anyone else like this. But if that outer layer is completed on appeal and access on appeal through reported, ideally through reported Third Circuit cases, that goes a long way. Your Honor, the cases cited in footnotes seven are about the interference with the right of access in a person's ability to prosecute an appeal. The O'Connell case cited in that footnote is about inadequate law library materials. So totally refuting the idea that there's some distinction in this court's case law between active interference and affirmative assistance. And that case also cites to Christopher, again, refuting the idea that these backward-looking claims that Christopher endorsed are somehow limited to context outside of the prison setting. There are also cases about the ability to file a cert petition, which I think is in fact the very end of the litigation process. Those are cited in footnote 17. And the Falsiglia case in footnote 17 is another law library access case. And you'll find, sorry, footnote 16 also is about pursuing appeals as well. So there are cases really throughout the spectrum of litigation from this court and including a number of them that arise specifically in the access, the law library access context. I'll just say just one final note. Many of them are unpublished. I will fully admit that. I think that's because most of these cases do come before this court by prisoners litigating pro se just as they're litigating pro se. And I think this only serves to underscore the importance of library access and allowing folks to effectively litigate their constitutional claims in the courts. Thank you. That's an interesting final point. I have nothing further. Any other questions from the panel? I have nothing further. I have no questions. All right. Thank you very much, counsel. We will take this matter under advisement.